# F. E. WATKINS v. W. E. NEILER COMPANY.[1]

January 12, 1917.

Nos. 20,030—(159).

**Principal and agent — authority of agent — evidence.**

1. The evidence justified the finding that the purchase by defendant for plaintiff's account of 250 barrels of pork for future delivery was authorized at the time it became necessary to close out the first 250 barrels admittedly purchased at plaintiff's request.

**Ratification by principal.**

2. The finding of ratification is also supported by sufficient evidence.

**Tender of judgment — subsequent costs.**

3. Defendant, having by its answer tendered judgment for the amount found due and the costs accrued to the time of the service of the answer, was entitled to tax subsequent costs under section 7826, G. S. 1913.

Action in the district court for Hennepin county to recover $531.25, The case was tried before Molyneaux, J., who made findings and ordered judgment for $31.25 in favor of plaintiff. From an order denying his motion to amend the findings or for a new trial, plaintiff appealed. Affirmed.

*Allen & Fletcher,* for apepllant.

*Cobb, Wheelwright & Dille,* for respondent.

HOLT, J.

In early August, 1914, plaintiff, a banker from Oklahoma, was on an outing at Osakis, this state. On account of the European war, just begun, he surmised there would be a great rise in food products. He ascertained that defendant, a corporation, was a broker on the Minneapolis and Chicago boards of trade, and on August 13, 1914, telephoned it to buy for his account 250 barrels of pork for September delivery. The telephone message was, on the next day, followed by a letter with inclosed

[1] Reported in 160 N. W. 864.

check to defendant. The letter reads: "Enclosed find ck. for $1000 for pork order of last night by phone. I want you to close it out after 1000 margin is out. Yours etc. F. E. Watkins, N. B. I'll make ck $2000 to protect you as I phoned you can get report on ck. from A. D. Horton, Hawarden, Ia. or I can refer you to A. J. Hogan, Cshr. City Natl. Bk. your city." Defendant bought as directed, but toward the end of August the market on pork declined. On the twenty-fifth of the month defendant by letter notified plaintiff of the situation and asked for further instructions, addressing the letter to Osakis. In this letter defendant said "Your Sept. Pork will have to be changed over, and Chicago recommends January, but we believe there will be more profit in wheat than provisions." Without informing defendant at all of where he could be reached, plaintiff had left Osakis, stopping first at Grand Forks, then at Winnipeg, and finally at International Falls. Not hearing from plaintiff defendant closed the pork contract at a loss of about $377.50, on August 28, and at the same time bought the same amount for January delivery, sending a confirmation or account of its doings to Osakis. August 31 plaintiff telegraphed defendant from Winnipeg: "Buy for my account 5 thousand bu. December wheat, address me International Falls." Defendant executed the order and notified plaintiff, sending notice and all subsequent communications to both International Falls and Osakis. On September eighth another order to buy 5,000 bushels of wheat for December delivery was given and filled. In the meantime both pork and wheat declined. Defendant requested further remittance on September 10, and gave the prices on December wheat and January pork. Another call was made on plaintiff for additional margin on September 12. Receiving no answer defendant closed out the pork on September 12 and the wheat two days later and reported fully to plaintiff. On September 11, 1914, plaintiff wrote from International Falls: "Expected to leave tonight for Mineapolis, but * * * at any rate I'll not get to your city before Monday. I cannot think market will break much more * * * Drag the deal along anyway to the extent of my account." On September 13, 1914, he writes from Osakis: "Will be in Minneapolis Wednesday morning and will settle any shortage." Instead of coming to Minneapolis plaintiff went to the west coast and did not come to Minneapolis until some time after the middle of October, 1914. Closing up the

pork and wheat transactions there remained $31.25 of plaintiff's $2,000 margin deposit. Plaintiff does not question the wheat deals and the loss upon the September pork; but he claims to have given no authority to purchase pork except the first 250 barrels, and sues to recover the sum which he would have had to his credit with defendant had no pork been bought for January delivery. Defendant pleaded authority to buy and ratification. The trial court found both true. The appeal challenges these findings.

There was no express direction to buy the January pork on or prior to August 28, and the court found that defendant was not authorized by any established custom to then buy. The law is not in dispute. The difficulty is in applying it to the situation at hand. If a principal has made use of ambiguous language in respect to the scope of the agent's duties, the loss should not fall on the agent if the latter in good faith sought to carry out the instruction according to his understanding of the language. It seems to us that plaintiff, by carelessness in not keeping in touch with defendant, and by the ambiguous wording of his letter inclosing the deposit for margins, placed defendant in a position where it had to act upon its own judgment as to whether the pork deal was to be carried beyond September 1. In the letter plaintiff stated: "I want you to close it out after 1000 margin is out." Instead of $1,000 he inclosed $2,000. And, whether the instruction be taken to refer either to a $1,000 or to a $2,000 margin, only $377.50 thereof had been used when the September pork had to be closed out and, as we understand it, the only way to keep plaintiff in the market for a speculative rise on 250 barrels of pork was to then buy that amount for future delivery. We think the court was justified in concluding that plaintiff conferred authority upon defendant to keep 250 barrels of pork on the market for future delivery until the deposit was exhausted, especially since plaintiff neglected to inform defendant where he could be reached for further instructions. Plaintiff knew that the market was uncertain and fluctuated rapidly. His letter of September 11 also points to authority wherein he says "drag the deal along anyway to the extent of my account." There is still a little of the margin left.

Nor, in our opinion, can the finding of ratification be disturbed. Defendant's reports and letters were in the hands of plaintiff, fully disclosing

the purchase for January delivery, when he writes that he "will be in Minneapolis Wednesday morning and will settle any shortage." The court might well find that when he penned those words he fully understood what had been done by defendant, notwithstanding his testimony that he had not carefully read defendant's communications.

The court held plaintiff entitled to recover $31.25 and costs accrued up to the time the answer was served, and awarded defendant the disbursements incurred subsequent to the time of such service. In the answer defendant tendered plaintiff judgment for that amount. This is in accord with section 7826, G. S. 1913, and plaintiff has no cause for complaint. There can be no substantial difference between an offer of judgment contained in an answer and one contained in any other writing or notice served upon a plaintiff.

Order affirmed.